IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE: | : | |
| | : | CASE NO. 5:11-bk-06193-RNO |
| WILLIAM D. DAVIS | : | |
| a/k/a WILLIAM DANIEL DAVIS | : | |
| a/k/a WILLIAM DAVIS, | : | |
| and | : | |
| LORI S. DAVIS | : | |
| a/k/a LORI S. DAVIS | : | |
| a/k/a LORI SUE DAVIS | : | |
| a/k/a LORI DAVIS | : | |
| | : | CHAPTER 13 |
| Debtors | : | |
| ************************************ | : | ************************************ |
| | : | |
| WILLIAM D. DAVIS, and | : | |
| LORI S. DAVIS | : | |
| Movant | : | |
| | : | |
| v. | : | |
| | : | |
| DUNMORE PROPERTIES, INC. | : | |
| | : | |
| Respondent | : | |

## OPINION[1]

Before the Court are two motions for summary judgment filed by William and Lori Davis ("Davis" or "Debtors") against Dunmore Properties, Inc. ("Dunmore"). The first motion for summary judgment seeks to reject an alleged executory contract between the Debtors and Dunmore ("Executory Contract Motion"). The second motion for summary judgment moves the Court to disallow Dunmore's proof of claim ("POC Motion"). For the reasons stated herein, both motions are granted.

---

[1] Drafted with the assistance of Joseph C. Barsalona II, Esq., Law Clerk.

## I. JURISDICTION

The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (B), and (K).

## II. FACTS AND PROCEDURAL HISTORY

The relevant facts in this case originate in the winter of 2007. In December of that year, the Debtors and AgChoice Farm Credit, ACA ("AgChoice") executed two mortgages in the amounts of $20,200.00 and $708,950.00, respectively. Movant's Mot. for Summ. J. as to Mot. of Dunmore Properties, ECF. No. 147 3-4 [*hereinafter* First Mot. for Summ. J.]; Jones Aff. ¶ 2; Fogal Aff. ¶ 2. On October 24, 2008, the Debtors and AgChoice executed a third mortgage in the amount of $10,000.00. First Mot. for Summ. J. 4; Jones Aff. ¶ 2; Fogal Aff. ¶ 2. The parties executed a fourth and final mortgage on December 16, 2008, in the amount of $20,000.00. First Mot. for Summ. J. 4; Jones Aff. ¶ 2; Fogal Aff. ¶ 2. Each of the four mortgages (collectively "AgChoice Mortgages") was duly recorded. First Mot. for Summ. J. 3-4; Jones Aff. ¶ 2; Fogal Aff. ¶ 2.

Particularly important to this matter is the following language that appears, verbatim, in all of the AgChoice Mortgages:

> MORTGAGOR hereby further covenants and agrees with the Mortgagee, its successors and assigns, as follows:
> . . . .
> Fifth: That he hereby assigns to the Mortgagee as additional collateral all royalties or other monies due or to become due from any surface or subsurface right or for any right or privilege other than for agricultural purposes in any way affecting or pertaining to the property hereby conveyed and all monies which may become due in any condemnation proceedings affecting the said premises and all sums received may be applied, at the option of the Mortgagee, to the discharge of any part or all of the indebtedness secured hereby, whether or not the same be due and payable, or at

> the option of the Mortgagee, such sums may be returned to the Mortgagor and **the Mortgagor will not grant any surface or subsurface rights without the written consent of the Mortgagee.** Without in any way limiting the generality of the foregoing, the above mentioned rights and privileges . . . shall include, but not limited to, **surface or subsurface mineral easements and profits** . . . .

*See* Ex. B, ECF No. 149-53 (emphasis added). Debtors argue that this provision conditions any purported transfer of mineral rights to a third party on the express written consent of AgChoice. First Mot. for Summ. J. 4. In support of this argument, Debtors filed affidavits taken by two officers of AgChoice: Bobby R. Jones, the Loan Officer for Special Assets, and Brian Fogal, the Vice President Credit Leader. Under oath, both individuals state that "prior written consent of AgChoice is required for the [Debtors] to grant, convey or assign any mineral rights . . . ." Jones Aff. ¶ 3; Fogal Aff. ¶ 3.

Notwithstanding this language, Debtors and Dunmore entered into an agreement on July 15, 2010 ("Dunmore Agreement"), allegedly transferring ownership interest of said mineral rights. Mot. to Assume Executory Contract ¶¶ 10-12; First Mot. for Summ. J. 5-6; Resp't's Br. in Opp'n to Debtor's Mot. for Summ. J. 2-3. In the mostly-handwritten agreement, Davis ostensibly transfers a 33% ownership interest in the mineral rights to Dunmore, as well as a right of first refusal to the remaining 67% interest, with a settlement date of September 30, 2010. Mot. to Assume Executory Contract ¶¶ 10-12; First Mot. for Summ. J. 5-6; Resp't's Br. in Opp'n to Debtor's Mot. for Summ. J. 2-3. Dunmore paid Davis a $10,000.00 deposit as consideration for the Dunmore Agreement. Mot. to Assume Executory Contract ¶ 12; Resp't's Br. in Opp'n to Debtor's Mot. for Summ. J. 3. Also, paragraph 12 of the Dunmore Agreement reads as follows:

> RECORDING. This Agreement shall not be recorded in the Office
> for the Recording of Deeds or in any other office or place of public
> record and if Buyer causes or permits this Agreement to be
> recorded, Seller may elect to treat such act as a breach of this
> Agreement.[2]

Mot. to Assume Executory Contract Ex. 1. Finally, it should be noted that, according to the filed affidavits, AgChoice "has not given its written consent to [the] contract and does not consent to it now." Jones Aff. ¶ 5; Fogal Aff. ¶ 5.

After the parties failed to close on September 30, 2010, Dunmore sought remediation in state court. On November 24, 2010, Dunmore recorded a Writ of Summons and perfected a praecipe for *Lis Pendens* in the Court of Common Pleas of Susquehanna County. Mot. to Assume Executory Contract ¶ 19. After a Rule to File Complaint was issued on December 29, 2010, Dunmore filed its complaint to the state court docket on January 15, 2010 ("State Court Complaint"), a copy of which is attached as Exhibit 1 to Dunmore's Motion to Assume Executory Contract. First Mot. for Summ. J. 5. The State Court Complaint states the same alleged terms of the Dunmore Agreement mentioned above and prays for specific performance of the agreement or, in the alternative, monetary damages totaling $594,682.44. Mot. to Assume Executory Contract Ex. 1.

The Debtors filed their voluntary Chapter 13 petition on September 7, 2011, which stayed the state court action. That same day, the proof-of-claim bar date was set for January 22, 2012. The Debtors' initial Chapter 13 plan was filed on October 25, 2011, but was not confirmed. Similarly, the Debtors' first amended plan was filed on March 18, 2012, but it too

---

[2] "Buyer" refers to Dunmore, while "Seller" refers to Davis.

was not confirmed.  It is important to note that although Dunmore filed an objection to the first amended plan, it allowed the claims deadline to expire without filing a timely proof of claim.

The Debtor's second amended plan ("Second Amended Plan") was filed on September 22, 2013.  Section 1.B. of the Second Amended Plan, i.e., the section devoted to liquidation of assets, reads:

> Debtor(s) shall dedicate to the plan, proceeds in the estimated sum of $1,100,000.00 from the sale of the farm, store, rental property and mineral rights, with the proceeds to be applied first to the real estate taxes due on these properties, then to the secured claims of AgChoice and Ellis, the balance to be paid into the plan resulting in a 100% plan with payments to all creditors whose claims are duly allowed . . . .
>
> All sales shall be completed on or before 12 months following plan confirmation.

Debtors' Second Am. Plan, Sept. 22, 2012, 2-3, ECF No. 105.  Within section 2.G. of the same plan, under lien avoidance, Dunmore is listed in the "Name of Creditor" column with the description of collateral stating: "Judicial lien by virtue of Lis Pendens entered 11/24/2010 in the Court of Common Pleas of Susquehanna County to no 2245 [sic] of 2010."  *Id.* at 5-6.  Furthermore, section 5 of the Second Amended Plan, i.e. the "Executory Contracts and Unexpired Leases" section of the plan, describes the Dunmore Agreement as follows: "Executory contract for sale of mineral rights, subject to consent of AgChoice per mortgage dated 12/7/2007 and prior gas lease to Cabot Oil and Gas."  *Id.* at 8.  In the associated "Assume/Reject" column the plan categorically states "reject."  *Id.*  Finally, in section 8, "Other Plan Provisions," the plan includes the following terms: "D. Debtors rejects [sic] the executory contract with Dunmore Properties Inc. . . . E. Debtor strips the judicial lien of Dunmore Properties Inc."  *Id.* at 9.

5

Dunmore filed an objection to the Second Amended Plan on October 26, 2012. The objection puts forth three grounds as to why the Second Amended Plan should not be confirmed: (1) Debtors are not entitled to avoid Dunmore's lis pendens filing; (2) Debtors are not entitled to reject the sale of mineral rights to Dunmore; and, (3) general objections. Objection of Dunmore Props., Inc., to Confirmation of 2d Am. Chapter 13 Plan Filed by Debtors, ECF No. 111. In support of objection (1), the paper merely states "Debtors are not entitled to avoid such lien through the Plan." *Id.* In support of objection (2), Dunmore states "[t]he matter referred to in the Plan should **not** be considered an executory contract." *Id.* (emphasis added). Finally, the general objections listed in objection (3) include three one-sentence statements purporting that the Second Amended Plan is not proposed "in a manner consistent with the" Code, it is not proposed in good faith, and "Dunmore does not accept the Plan within the meaning of the Bankruptcy Code." *Id.*

In support of confirmation of the Second Amended Plan, Debtors submitted affidavits from two AgChoice officers (the same affidavits Davis would later submit in support of both motions for summary judgment) along with copies of every AgChoice mortgage on record, the Dunmore Agreement, and a land-sale contract between Debtors and Mr. Mark Powers ("Powers Agreement"). The Powers Agreement is the contract referenced in the Second Amended Plan in section 1.B. *See* Debtors' Second Am. Plan, Sept. 22, 2012, ECF No. 105 (providing $1,100,000.00 purchase price). Within the affidavit itself, Loan Officer Bobby R. Jones unambiguously consents to the Powers Agreement on behalf of AgChoice. Jones Aff. ¶ 6.

6

On December 17, 2012, Dunmore withdrew its objection to the Second Amended Plan. The next day, December 18, 2012, this Court ruled the Second Amended Plan eligible for confirmation, with the confirmation order subsequently issued on December 19, 2012.

On the same day the Second Amended Plan was confirmed, Dunmore filed its proof of claim, claim number 11-1, in the amount of $594,682.44 ("Dunmore POC"). The claimed amount of debt comports with the averred damages figure in the State Court Complaint. On the Official Form B10, the basis of the claim is an alleged "breach of real estate sales contract." First Mot. for Summ. J. Ex. 1 ¶ 8.

Subsequently, Davis filed an objection to the Dunmore POC on February 26, 2013. The relatively short objection argues that the Second Amended Plan's language rejecting the contract disallows the Dunmore POC. Objection to Claim Number 11 of Dunmore Props., Inc. 2. Davis accompanied their objection with a brief and three discovery requests: interrogatories, request for production of documents, and request for admissions. In order to respond in a timely fashion to the bevy of filings, Dunmore moved to enlarge the deadlines to respond on March 22, 2013. This Court later granted Dunmore's request and set the deadline for April 29, 2013.

On April 17, 2013, Dunmore filed an answer to Davis' objection to the Dunmore POC as well as a document titled Motion of Dunmore Properties, Inc. for the Entry of an Order Determining the Extent of Debtors' Action to Avoid Liens and Extent of Debtors' Actions to Value Collateral and Effect of the Attempt to Reject an Executory Contract and to Determine if Rejection is Appropriate ("Motion to Assume Executory Contract"). The filings provided the same facts as those mentioned, *supra*, regarding the Dunmore Agreement. Answer to Objection to Claim ¶¶ 6-21, 32-33; Mot. to Assume Executory Contract ¶¶ 6-21, 33. As for argument,

7

Dunmore reiterates that the Dunmore Agreement is not an executory contract under the Code, and thus is not subject to rejection. Answer to Objection to Claim ¶¶ 32-33; Mot. to Assume Executory Contract ¶¶ 32-33. No Bankruptcy Code section or case law is cited to support this proposition. *See* Answer to Objection to Claim ¶¶ 32-33 (no support provided); Mot. to Assume Executory Contract ¶¶ 32-33 (same). As an alternative argument, Dunmore states that if the Dunmore Agreement is found to be executory, the amount of damages, if any, "is covered under 11 U.S.C. § 365(I) . . . ." Answer to Objection to Claim ¶ 36; Mot. to Assume Executory Contract ¶ 36.

The Debtors filed an answer to the Motion to Assume Executory Contract on May 10, 2013. Soon after, they filed the two motions for summary judgment which are the subject of this opinion: the Executory Contract Motion and the POC Motion. Each of the motions for summary judgment contains its own Statements of Material Facts. *See* First Mot. for Summ. J. Ex. 1 (providing eight numbered paragraphs); Movant's Mot. for Summ. J. as to Mot. of Dunmore Properties, ECF. No. 148 Ex. 1 [*hereinafter* POC Motion] (providing four numbered paragraphs). Davis later filed an "amended" version of the POC Motion, however this version contained no procedural or substantive changes. *See* Answer to Debtor's Am. Mot. for Summ. J. 1 ("The amended motion minimally changed the motion of the Debtor and the response of . . . Dunmore . . . remains procedurally and substantially the same . . . .").

Dunmore filed answers to both the Executory Contract Motion and the POC Motion on June 13, 2013. Missing from the filings was any form of counter-statement to Davis' Statements of Material Facts or Dunmore's own statement of material facts. Also excluded were any briefs in support of Dunmore's answers. To allow Dunmore's counsel to explain the omissions, the

8

Court held a Show Cause Hearing on August 7, 2013.  Dunmore's counsel failed to appear at this hearing.  Thus, pursuant to Local Bankruptcy Rule 7056-1 (explained fully in section III.A *infra*), the Court deemed Davis' statements of materials facts from both motions admitted.

Subsequently, Dunmore filed a Motion to Reconsider the ruling on the statements of materials facts.  Oral argument was heard on September 5, 2013, after which I allowed Dunmore to file briefs in support of its answers, but kept my ruling on the statements of material facts intact.  With the filing of Dunmore's briefs on September 23, 2013, this matter became ripe for decision.

### III.  DISCUSSION

#### A.  Standard to Decide a Motion for Summary Judgment Under F.R.B.P. 7056

All contested matters in bankruptcy are governed by Rule 9014 of the Federal Rule of Bankruptcy Procedure ("F.R.B.P.").  Rule 9014(c) provides an exhaustive list of Part VII rules, i.e., those that pertain specifically to adversary proceedings, which also apply to contested matters.  Within that list is F.R.B.P. 7056, i.e., the rule governing summary judgment.

F.R.B.P. 7056 incorporates Rule 56 of the Federal Rules of Civil Procedure ("F.R.C.P."). Pursuant to F.R.C.P. 56(a), it is the movant's burden to prove that no genuine dispute exists as to any material fact and that the movant is entitled to judgment as a matter of law.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  If the movant satisfies this standard, the burden shifts to the non-movant to prove that genuine issues of material fact still exist and that summary judgment is inappropriate.  *Burtch v. Masiz (In re Vaso Active Pharmaceuticals, Inc.)*, Adv. Pro. No. 11-52005 (CSS), 2013 WL 5631025, at *4 (Bankr. D. Del. Oct. 15, 2013) (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

9

In deciding such a motion, all factual inferences must be viewed in the light most favorable to the respondent. *Abramson v. William Paterson College of New Jersey*, 260 F.3d 265, 276 (3d Cir. 2001). The fact-finder does not look at the pleadings in a vacuum; he instead "must review the record taken as a whole." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000) (citing *Matsushita*, 475 U.S. at 587).

The Middle District of Pennsylvania Rules of Court are applicable in bankruptcy matters pursuant to Local Bankruptcy Rule 7056-1. Bankr. M.D. Pa. R. 7056-1. In support of a motion for summary judgment, Local District Court Rule 56.1 requires the movant to file a "separate, short and concise statement of the material facts . . . as to which the moving party contends there is no genuine issue to be tried," with references to the specific parts of the record that support the statements. M.D. Pa. R. 56.1. Likewise, the non-moving party is obligated to respond with a "separate, short and concise statement" of their own material facts, in order to support the assertion that there exists "a genuine issue to be tried." *Id.* Furthermore, the moving party's material facts will be "deemed admitted unless controverted by the statement required to be served by the opposing party." *Id.*

Here, there exists no general dispute as to any material fact because the Court has already deemed admitted the Debtors' statements of material fact in both motions for summary judgment. Thus, this opinion will decide which party must prevail as a matter of law.

### B. The Confirmed Plan Clearly Rejected the Alleged Executory Contract

#### I. The Second Amended Plan's Language Controls

My decision on the Executory Contract Motion is based primarily on the Davis' Second Amended Plan. The binding effect a confirmed Chapter 13 plan has on a debtor and his creditors

10

cannot be overstated. The Code clearly states that "[t]he provisions of a confirmed plan bind the debtor and each creditor, whether or not the claim of such creditor is provided for by the plan, and whether or not such creditor has objected to, has accepted, or has rejected the plan." 11 U.S.C. § 1327(a).[3] Additionally, "a confirmation order is *res judicata* as to all issues decided or which could have been decided at the hearing on confirmation." *In re Mansary-Ruffin*, 530 F.3d 230, 238 (3d Cir. 2008) (citing *In re Szostek*, 886 F.2d 1405, 1408 (3d Cir. 1989)). Thus, it is "well settled law that a confirmed plan is final." *Szostek*, 886 F.2d at 1410.

The Executory Contract Motion is granted because the language of the Davis' confirmed Chapter 13 plan categorically rejects the Dunmore Agreement. Debtors' Second Am. Plan, Sept. 22, 2012, 8, ECF No. 105. This decision was made final by the Court's confirmation order filed on December 19, 2012. Dunmore had the opportunity to object to the treatment of the Dunmore Agreement through the plan and to be heard at the time of confirmation. Instead, Dunmore withdrew its objection on December 17, 2012, thereby eliminating its challenge to the now-binding plan. Thus, the Dunmore Agreement is deemed rejected for purposes of § 365(a). I conclude that Davis is entitled to judgment as a matter of law.

### ii. An "Executory Contract" Analysis is Unnecessary

While the rejection of the Dunmore Agreement by the Second Amended Plan should end the issue, the parties debate whether the agreement is indeed an "executory contract" and thus susceptible to rejection under § 365(a). This question may have been relevant prior to

---

[3] Unless otherwise noted, all future statutory references are to the Bankruptcy Code, 11 U.S.C. § 101, et seq., as amended by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. No. 109-8, 119 Stat. 37 ("BAPCPA").

11

Case 5:11-bk-06193-RNO    Doc 199    Filed 12/12/13    Entered 12/12/13 13:25:04    Desc
Main Document    Page 11 of 19

confirmation of the Second Amended Plan, but within the post-confirmation context this issue is irrelevant.

Under § 1322(b)(2), a plan "may . . . modify the **rights** of holders of secured claims, . . . or of holders of unsecured claims . . . ." 11 U.S.C. § 1322(b)(2) (emphasis added). The term "rights" in this provision includes contract rights between a debtor and his creditors. *See Nobelman v. Am. Sav. Bank*, 508 U.S. 324, 327-30 (1993) (stating that the term 'rights' includes the contractual rights of creditor). Furthermore, subsection (b)(7) states that the plan may, "subject to section 365 . . ., provide for the assumption, rejection, or assignment of any executory contract . . . not previously rejected under such section." 11 U.S.C. § 1322(b)(7).

In essence, a chapter 13 plan may label an agreement an "executory contract" (thereby modifying the rights of the creditor) via § 1322(b)(2), and then reject that agreement under § 1322(b)(7) subject to the requirements of § 365. That is precisely what happened here: the Second Amended Plan listed the Dunmore Agreement as an executory contract in section 5 and then rejected it. Debtors' Second Am. Plan, Sept. 22, 2012, 8, ECF No. 105. Additionally, Dunmore cannot claim that it was surprised by the Dunmore Agreement's treatment in the Second Amended Plan as an executory contract since it has been labeled as such by the Debtors since the filing of their Schedule G – Executory Contracts and Unexpired Leases on October 25, 2011. Dunmore had the opportunity to challenge this choice from the time the case commenced through the confirmation hearing, a period of more than one year, and did not do so. Dunmore cannot now, *ex post* confirmation, dispute the effect of a confirmation order it failed to litigate at the appropriate time. *See Hope v. Acorn Fin. Inc.*, 731 F.3d 1189, 1194 (11th Cir. 2013) (citing *Universal Am. Mortg. Co. v. Bateman (In re Bateman)*, 331 F.3d 821, 822 (11th Cir. 2003)

12

("[S]ecured creditor cannot collaterally attack a confirmed Chapter 13 plan, even though the plan conflicted with the mandatory provisions of the Bankruptcy Code, when the secured creditor failed to object to the plan's confirmation or appeal the confirmation order.") (internal citations omitted).

Similarly, § 365(a) allows rejection or assumption of an executory contract "subject to the court's approval." 11 U.S.C. § 365(a). When this issue arises pre-confirmation, an "approval" process usually involves an analysis of the contract's terms under nonbankruptcy law and whether rejection/assumption was the product of reasonable business judgment. *See In re Nickels Midway Pier, LLC*, 255 F. App'x 633, 636-37 (3d Cir. 2007) (the Court determined first whether the agreement at issue is an "executory contract" and if so whether the business judgment test was satisfied); *In re HQ Global Holdings, Inc.*, 290 B.R. 507, 509-12 (Bankr. D. Del. 2003) (same).

However, that analysis is not needed in this case. Here, I find that the confirmation of the Second Amended Plan, which cemented the plan's terms, is all that was required to effect rejection under § 365(a). Furthermore, the confirmation order would need to be revoked in order for the result to change. *See In re Fesq*, 153 F.3d 113, 119 (3d Cir. 1998) (citing *Szostek*, 886 F.2d at 1413) ("Once the debtor's plan was confirmed, it became final under § 1327 and, absent a showing of fraud under § 1330(a), it could not be challenged . . . ."). "[F]raud is the only ground for relief available for revocation of a Chapter 13 confirmation order." *In re Fesq*, 153 F.3d 113, 120 (3d Cir. 1998); *In re Rodriguez*, 521 F. App'x 87, 89 (3d Cir. 2013). No fraud on the part of the Debtors is alleged here and therefore the confirmation order remains in force.

13

Thus, I find that the Dunmore Agreement is an executory contract subject to rejection under § 365(a), and I ratify the rejection of that contract in the Second Amended Plan.

**C.  Dunmore's Claim is Disallowed**

**I.  The Second Amended Plan's Impact on the Dunmore Claim**

We start from the same premise as decided above: the Second Amended Plan's language is binding on all creditors.  With this in mind, certain reductions to the Dunmore POC must be made at the outset.

The Second Amended Plan lists the *lis pendens* filed by Dunmore as an avoidable judicial lien, which is not technically correct.  The code defines a "judicial lien" as a "lien obtained by judgment, levy, sequestratrion, or other legal or equitable process or proceeding." 11 U.S.C. § 101(36).  In contrast, under Pennsylvania law,

> the effect of a lis pendens is not to establish actual liens upon the
> properties affected nor has it any application as between the parties
> to the action themselves; all that it does is to give notice to third
> persons that any interest they may acquire in the properties
> pending the litigation will be subject to the result of the action . . . .

*Dice v. Bender*, 117 A.2d 725, 726-27 (Pa. 1955); *Kohl v. PNC Bank Nat'l Ass'n*, 912 A.2d 237, 242 n.6 (Pa. 2006).  It follows that a *lis pendens* is not a judicial lien as defined in the Bankruptcy Code.  Furthermore, under Pennsylvania law, a *lis pendens* is "wholly subject to equitable principles."  *Rosen v. Rittenhouse Towers*, 482 A.2d 1113, 1116 (Pa. Super. 1984).  A *lis pendens* notifies parties searching a chain of title of the pending of a legal action which may affect the property's title.  In the post-confirmation context, however, this misnomer is irrelevant.  Dunmore might have challenged the treatment of its *lis pendens* filing at the time of

14

confirmation, but it failed to do so. As a result, the confirmation order 're-characterized' the *lis pendens* as an avoidable judicial lien.

Section 2.G. of the Second Amended Plan clearly provided for the avoidance of the lien/*lis pendens*. As background, our district uses a Chapter 13 Model Plan which requires a debtor to indicate on the first page of the document whether the plan includes a motion to avoid lien. *See Dronsfield v. McGarrity (In re Dronsfield)*, 441 B.R. 242, 247 (Bankr. M.D. Pa. 2010) (explaining the model plan in the U.S. Bankruptcy Court for the Middle District of Pennsylvania). If the debtor indicates that a lien shall be avoided, section 2.G. must be filled out with the appropriate information. *Id.* Section 2.G. thereby incorporates the lien-avoiding procedure of § 522(f) into confirmation hearings. *Id.* Here, Dunmore did not object to the treatment of its lien/*lis pendens* in the Second Amended Plan, and thus it was avoided by the entry of the confirmation order.

As a result, the Dunmore POC, based solely on the Dunmore Agreement, shall be treated as a rejected executory contract pursuant to the terms of the Second Amended Plan and my decision in section III.B., *supra*. We next turn to the analysis of whether Dunmore's claim is allowed or disallowed.

### ii. Calculation of the Appropriate Dunmore Claim

The Dunmore Agreement must be classified appropriately within the context of the Code for its treatment to be ascertained. For these purposes, I find that the Dunmore Agreement is an executory contract for the sale of real property for various reasons. Most importantly, under Pennsylvania law, conveyance of oil, gas, or mineral rights is a conveyance of an interest in realty. *In re Vincente*, 257 B.R. 168, 182 (Bankr. E.D. Pa. 2001); *Mellon Bank, N.A. v. Crystian*

15

Case 5:11-bk-06193-RNO   Doc 199   Filed 12/12/13   Entered 12/12/13 13:25:04   Desc
Main Document   Page 15 of 19

*(In re Crystian)*, 197 B.R. 803, 804 (Bankr. W.D. Pa. 1996). As the Dunmore Agreement is not a 'lease to use' but instead a contract for the rights themselves, it qualifies as a conveyance of an interest in realty. Secondly, throughout this litigation the parties have referred to the Dunmore Agreement as a transfer of realty or other similar term. *See, e.g.*, First Mot. for Summ. J. Ex. 1 ¶ 8 (claim is for "breach of real estate sale contract"); Answer to Objection to Claim ¶ 10 (classifies the Dunmore Agreement as an "Agreement of Sale of Real Estate"); Mot. to Assume Executory Contract ¶¶ 10 (same); POC Motion, 19-23 (providing a real property analysis to the Dunmore Agreement). This supports the fact that the parties contracted with the intention to transfer and receive interests in real property. Hence, the Dunmore Agreement is deemed a sale of real property for the purposes of § 365.

To determine the maximum amount that Dunmore may claim against the Davis estate, we turn next to the relevant portion of § 365 focused on the rejection of executory contracts for the sale of real property, § 365(j). That section of the Code reads:

> A purchaser that treats an executory contract as terminated under subsection (I) of this section, **or a party whose executory contract to purchase real property from the debtor is rejected and under which such party is not in possession**, has a lien on the interest of the debtor in such property for the recovery of any portion of the purchase price that such purchaser or party has paid.

11 U.S.C. § 365(j) (emphasis added). From the statute's clear language, the highest amount Dunmore can claim is a lien in the amount of the deposit it paid. From the supporting papers, this amount equals $10,000.00. Mot. to Assume Executory Contract ¶ 12; Resp't's Br. in Opp'n to Debtor's Mot. for Summ. J. 3. Therefore, the most Dunmore can claim is a lien in the amount of $10,000.00 against the real property of the Debtors covered by the Dunmore Agreement.

Dunmore contends in its filings that if the Court determined the Dunmore Agreement to be an executory contract—which I have—then § 365(I) would set the appropriate measure of damages. Answer to Objection to Claim ¶ 36; Mot. to Assume Executory Contract ¶ 36. This is an incorrect reading of the statute. Section 365(I) applies to rejected executory contracts for the sale of real property, but only those "under which the purchaser is **in possession**." 11 U.S.C. § 365(i)(1) (emphasis added). This section is intended to create a remedy for "purchaser[s] **already** in possession to **leave**." *McCannon v. Marston*, 679 F.2d 13, 18 (3d Cir. 1982) (emphasis added). Dunmore is not in the possession of any real property of the Debtors and never has been. If any party retained an interest in the real property other than the Debtors, it would be AgChoice by way of the AgChoice Mortgages. Thus, § 365(i) is not available to Dunmore.

### iii. The Second Amended Plan Stripped Off Dunmore's Lien

One general principle in bankruptcy is that a § 365(j) lien "has the lowest priority of all secured interests in the bankruptcy estate." *In re Levitt and Sons, LLC*, No. 07-19845-BKC-RBR, 2008 WL 2783154, at *5 (Bankr. S.D. Fla. July 16, 2008); *see also Thompson Designs, Inc. v. Treasurer of Hamilton Cnty. (In re Thompson Designs, Inc.)*, 213 B.R. 725, 729 (Bankr. S.D. Ind. 1997) ("[I]t is clear that Congress intended 365(j) liens to have the very lowest priority of all secured interests in the bankruptcy estate."); *Aetna Bank v. Dvorak*, 176 B.R. 160, 163 (N.D. Ill. 1994) ("[W]e have found no evidence that the protection embodied in § 365(j) . . . was meant to include a special priority for that lien."). This principle is only strengthened in the post-confirmation context.

Case 5:11-bk-06193-RNO    Doc 199    Filed 12/12/13    Entered 12/12/13 13:25:04    Desc
Main Document    Page 17 of 19

Once again, a confirmation order is *res judicata* as to all issues which could have been decided at the confirmation hearing. *In re Mansary-Ruffin*, 530 F.3d at 238 (citing *In re Szostek*, 886 F.2d at 1408). Dunmore had the opportunity to challenge the Second Amended Plan as written, yet it withdrew its objection and did not dispute the treatment of its rights at the appropriate time. Instead, Dunmore sat on its rights and allowed the Second Amended Plan to be confirmed, thereby allowing all of its interests, including its § 365(j) lien, to be avoided.

Furthermore, the Second Amended Plan incorporates an Agreement of Sale for the real estate at issue to Mr. Mark Powers, a third-party purchaser. Debtors' Second Am. Plan, Sept. 22, 2012, 2-3, ECF No. 105. The plan also lists the parties set to receive the proceeds of that sale, of which Dunmore is not included. *Id.* Again, the confirmation order is final and binding. Dunmore's §365(j) lien is conspicuously not provided for. This adds additional support to my holding that Dunmore's § 365(j) lien was avoided by entry of the confirmation order.

Thus, the Dunmore POC is entirely disallowed because it was avoided by the confirmation of the Second Amended Plan. I find that Davis is entitled to judgment on their objection to Dunmore's claim as a matter of law.

## IV. CONCLUSION

For the reasons stated above, both of the Debtors' motions for summary judgment are granted. The Executory Contract Motion is granted because the Dunmore Agreement is an executory contract subject to rejection under § 365(a), and I ratify the rejection of that contract in

18

the Second Amended Plan.  The POC Motion is granted, and the Dunmore POC is disallowed, because its § 365(j) lien was avoided via the confirmation of the Second Amended Plan.  An Order will be entered consistent with this opinion.

By the Court,

Date: December 12, 2013

Robert N. Opel, II, Bankruptcy Judge

(BI)